UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NICHOLAS BERGAMATTO,

      Plaintiff,

v.

BOARD OF TRUSTEES OF THE
NYSA-ILA PENSION TRUST FUND
and CHARLES WARD, Plan
Administrator,

      Defendants.

Civ. No. 16-5484 (KM)

OPINION

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiff, Nicholas Bergamatto ("Bergamatto"), brings this action against the Board of Trustees of the New York Shipping Association International Longshoremen's Association Pension Trust Fund ("the Board"), and Charles Ward ("Ward") in his alleged capacity as plan administrator of the Pension Trust Fund. Bergamatto seeks to recover pension benefits under an employee pension benefit plan.[1] The plan is covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*[2]

Defendants now move for summary judgment. For the reasons discussed below, that motion is granted.

---

[1] Bergamatto also seeks a declaration that the Board's request for refund of temporary disability benefits is null and void; attorney's fees and costs of court; and statutory penalties in the amount of $11,500. (Compl. at 5 and 6).

[2] The parties do not dispute that the pension benefit plan at issue is governed by ERISA.

1

## I. Background

I previously considered this case in the context of defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *See Bergamatto v. Bd. of Trustees of NYSA-ILA Pension Tr. Fund*, No. CV 16-5484 (KM), 2017 WL 4155225 (D.N.J. Sept. 18, 2017). Familiarity with that opinion, which relates the background of the litigation and the allegations of the complaint, is assumed.

### A. Procedural History

On September 9, 2016, Bergamatto filed this action pursuant to ERISA section 502, 29 U.S.C. §1132(e)(1). (Compl. ¶ 4). The Complaint alleges 1) wrongful denial of accrued benefits, and 2) statutory penalties for disclosure violations. (*Id.* at ¶¶ 20–23).

Defendants, the Board and Ward, filed a joint motion to dismiss the Complaint on December 2, 2016. (ECF no. 8). I denied that motion by Order and Opinion filed September 18, 2017. (ECF nos. 19, 20).

On October 2, 2017, Defendants filed an Answer to Bergamatto's Complaint, including Affirmative Defenses. (ECF no. 23).

On February 23, 2018, Defendants filed a motion for summary judgment. (ECF no. 31). On April 12, 2018, Bergamatto filed a brief in opposition to Defendants' motion for summary judgment. (ECF no. 36). On April 25, 2018, Defendants filed a reply brief. (ECF no. 39).

## B. Relevant Facts[3]

In 2000, Bergamatto began employment as a dockworker with employers affiliated with the New York Shipping Association ("NYSA"). (DSMF ¶ 3; Bergamatto Aff. ¶ 2). As a result of his employment, he became a member of the International Longshoremen's Association ("ILA"). (Bergamatto Aff. ¶ 2.)

From 2000 to 2003, Bergamatto did not participate in his employer's pension plan, the NYSA-ILA Pension Trust Fund ("Fund"), a "joint labor-management trust fund established in or about 1950 to administer a multi-employer pension benefit plan [.]" (*Id.*; DSMF ¶ 1; Ward Aff. ¶ 4). Instead, during that time, he participated in an annuity program. (Bergamatto Aff. ¶ 2.) In 2004, however, Bergamatto became a participant in the Fund. (*Id.*)

According to Bergamatto, on April 23, 2010, the Waterfront Commission suspended his waterfront pass, thereby leaving him unable to work.[4] (Bergamatto Aff. ¶ 3). About six months later, on October 27, 2010, while still suspended, Bergamatto injured his rotator cuff, an injury which rendered him temporarily disabled. (*Id.*) He received temporary disability benefits and at the time, expected to return to work following the lifting of his suspension. (*Id.*) However, the suspension of his waterfront pass was never lifted. (*Id.* at ¶ 4.) Thereafter, in April 2013, Bergamatto submitted his application for retirement benefits in-person to Charles Ward, the Executive Director of the Fund. (*Id.*;

---

[3] Pursuant to Local Rule 56.1, Defendants submitted a Statement of Undisputed Material Facts ("DSMF")(ECF no. 31-2). However, Plaintiff Bergamatto did not file a response to Defendants' Statement, as Local Rule 56.1 requires. He instead appears to rely on the Complaint, exhibits from the motion-to-dismiss stage, and Ward's deposition testimony to support his factual allegations. *See* (Pl. Opp. 1-4.) I would therefore be justified in treating the facts as undisputed, *see* Fed. R. Civ. P. 56(e)(2), (3), but I need not do so here because Bergamatto's submissions do not raise any genuine issue that is truly material to the issues now before this Court.

For purposes of this motion, I therefore consider the DSMF, as well as the deposition testimony, Affidavits, and documentary evidence.

[4] It appears that the suspension was related to New Jersey State authorities' arrest of Bergamatto in April 2010. *See* (ECF No. 8-2, Exh. 1). Bergamatto subsequently pled guilty to a charge of third-degree money laundering on October 28, 2011. (*Id.*)

3

Ward. Aff. ¶¶ 2, 9; DSMF ¶ 4; Ward Dep. 6:9.) According to Ward, at that meeting, he provided Bergamatto with a copy of the February 2010 "Summary Plan Description of the NYSA-ILA Pension Trust Fund and Plan." (Ward. Aff. ¶ 9). *See* (Summary Plan Description, ECF no. 31-3, Exh. 1).

Before Bergamatto's retirement, in April 2013, NYSA and ILA had entered into a collective bargaining agreement for the Port of New York and New Jersey which, in part, provided that pension participants hired after October 1996 would receive credit for pension benefit accruals based on years worked from 1996 to 2004. *See* (ECF no. 31-3, Exh. 5, NYSA-ILA Pension Trust Fund and Plan Secretary's Certificate at 1)("[e]ffective October 1, 2012, Participants hired on or after October 1, 1996 shall receive pension benefit accruals for years of credited service earned from 1996 through 2004 [.]"). On May 2, 2013, the Board amended the NYSA-ILA Pension Trust Fund's January 7, 2010 Agreement and Declaration of Trust and Plan ("2010 Plan") to incorporate that new provision, which by its terms was effective October 1, 2012. (*Id.* at 1; DSMF ¶ 5).

By letter dated June 20, 2013, Ward informed Bergamatto that effective July 1, 2013 and retroactive May 1, 2013" he was approved to receive pension benefits. (ECF no. 31-3, Exh. 2). Ward made that determination based on the terms of the 2010 "Agreement and Declaration of Trust and Plan of the New York Shipping Association-International Longshoremen's Association Pension Trust Fund and Plan." (Ward. Aff. ¶ 11). *See* (2010 Plan, ECF No. 31-3, Exh. 3) (providing copy of the "Agreement and Declaration of Trust and Plan of the New York Shipping Association-International Longshoremen's Association Pension Trust Fund and Plan," which was amended and restated on January 7, 2010).

Ward signed the letter and the typed signature line indicates that Ward is the Executive Director of the Fund. (ECF no. 31-3, Exh. 2.) The next month, on July 21, 2013, Bergamatto, through counsel, submitted a "Dear Sir or Madam" letter to the Fund requesting pension credit for his years of service from 2001 to 2004 pursuant to the May 2, 2013 Amendment. (ECF no. 31-3,

4

Exh. 6). By letter dated July 25, 2013, Ward responded on behalf of the Fund and rejected Bergamatto's request. (ECF no. 31-3, Exh. 7). Ward's letter states:

> The NYSA-ILA Pension Trust Fund and Plan states as follows:
>
> Article I, Section 2:
>
> The provisions of the Plan in effect during the Participant's last year of credited service shall be applied to determine the Participant's right to benefits and amounts thereof.
>
> Since Mr. Bergamatto's last year of credited service was 2010, prior to the effective date of the contractual provision, he would not be entitled to credited service for the years prior to 2005.
>
> This decision may be appealed to the Board of Trustees, NYSA-ILSA Pension Trust Fund, 77 Water Street, 16 Floor, New York, NY 10005.

(*Id.*) Ward signed the letter as Executive Director of the Fund. (*Id.*)

Nearly a year later, Ward received a letter dated July 10, 2014 from new counsel for Bergamatto. (ECF no. 31-3, Exh. 8.) The letter, directed specifically to Ward, reiterated Bergamatto's July 2013 request for pension credit for the years 2001 through 2004. (*Id.*) It explained that based on documents counsel had in his possession, "which include[d]" a March 13, 2013 memorandum from the President of the ILA and a *Settlement of Local Conditions for New NYSA-ILA CBA* as of March 13, 2013, Bergamatto was entitled to that credit. (*Id.*) It stated: "I presume that the aforementioned documents are an accurate representation of the amendments to the NYSA-ILA Plan and summary plan description (SPD). If they are in any way inconsistent with same, I would appreciate your forwarding me copies of the pertinent Plan or SPD amendments in accordance with 29 U.S.C. Sec. 1021(a)." (*Id.*)

According to Ward, he "had no idea" what documents counsel had in his possession, "as he never specified what documents he had." (Ward Aff. ¶ 21). Ward "assumed that the 2010 SPD was in [counsel's] possession, as [Ward] had given a copy to Mr. Bergamatto on April 25, 2013." (*Id.*) Ward interpreted the letter "as not raising a problem of inconsistent documents, but as [counsel] misunderstanding the 2010 Plan itself." (*Id.*)

In a letter dated July 25, 2014, which was addressed to counsel for Bergamatto, Ward referenced and quoted the Plan's Pension Determination Clause, which stated: "[t]he provisions of the Plan in effect during the Participant's *last year of credited service* shall be applied to determine the Participant's right to benefits and the amount thereof." (ECF no. 31-3, Exh. 9) (emphasis added). He concluded:

> Mr. Bergamatto's last year of credited service was 2010. Therefore, he was not eligible for any provision under the contract effective October 1, 2012.
>
> You may dispute this decision by appeal to the Board of Trustees, NYSA-ILSA Pension Trust Fund, 77 Water Street, 16th Floor, New York, NY 10005.

(*Id.* at 2.) Ward signed the letter as Executive Director of the Fund. (*Id.*)

Over three months later, on November 14, 2014, Ward received a letter from Bergamatto, again through counsel. (Ward Aff. ¶ 23). *See* (ECF no. 31-3, Exh. 10.) In that letter dated November 12, 2014, Bergamatto's counsel claimed that Ward did not respond to his July 10, 2014 letter. (*Id.*) He also informed Ward that he "had already incurred $9500.00 in penalties pursuant to 29 U.S.C.A. sec. 1132(c)(1)." (*Id.*)

That same day, Ward sent Bergamatto's counsel a letter stating: "I am enclosing a copy of my letter dated July 25, 2014." (Ward Aff. ¶ 24; ECF no. 31-3, Exh. 11). *See* (DSMF ¶ 13). The letter enclosed a copy of Ward's previous letter. *See* (ECF no. 31-3, Exh. 11 at 2-3).

In a letter dated November 21, 2014, Bergamatto, through counsel, rejected Ward's response as untimely. (ECF No. 31-3, Exh. 12.) He also stated: "I am reiterating my demand for the summary plan description in effect for the year 2013." (*Id.*) According to Ward, that letter was "the first time [he] understood [counsel] to be requesting a copy of the summary plan description." (Ward Aff. ¶ 25.) *See* (DSMF ¶ 14).

6

On December 2, 2014, pursuant to the request, Ward sent Bergamatto a copy of the 2010 summary plan description, as well as Bergamatto's work record. (ECF No. 31-3, Exh. 13.) *See* (DSMF ¶ 15).

About one month later, on January 6, 2015, Bergamatto, through counsel, appealed Ward's denial of benefits to the Board. (ECF No. 31-3, Exh. 14.) The Board held a hearing on June 18, 2015 and ultimately affirmed Ward's decision. (Ward Aff. ¶ 30.) *See* (ECF No. 31-3, Exh. 17) (providing the minutes of the meeting). The Executive Secretary of the Fund sent Bergamatto a letter dated July 29, 2015 informing him of the Board's decision. (ECF no. 31-3, Exh. 19). The letter stated

> The Board resolved as follows:
>
> That the Executive Director's July 25, 2014 decision that denied the request of NICHOLAS BERGAMOTTO for four additional years of credited service for pension benefit accrual purposes for Contract Years ending September 30, 2001, 2002, 2003 and 2004 is affirmed based upon (1) Article VIII, Section 2, of the Amended and Restated Agreement and Declaration of Trust and Plan dated January 26, 2015 (2015 Plan) which provides that the provisions of the Plan in effect during the Participant's last year of credited service shall be applied to determine the Participant's right to a benefit and the amount thereof, (2) NICHOLAS BERGAMOTTO's work record which establishes that the Contract Year in which he last earned credited service was the Contract Year ending September 30, 2010, (3) Article V, Section 1, of the Amended and Restated Agreement and Declaration of Trust and Plan dated January 7, 2010 (2010 Plan) which provides, with various exceptions that apply only to the amount of benefits, that the provisions of the Plan in effect during the Participant's last year of credited service shall be applied to determine the Participant's right to benefits and the amount thereof, and (4) Article II, Section 1, (q) (iii) of the 2010 Plan which provides that "notwithstanding anything to the contrary in this Plan, any person who was hired for employment in the longshore industry on or after October 1, 1996, and who was not a Participant as of September 30, 2004, shall be eligible to participate as a participant in the Plan effective October 1, 2004, but shall <u>not</u> be entitled to accrue credited service for pension benefit accrual purposes under the Plan for any hour of employment earned prior to October 1, 2004" [Emphasis supplied].

(*Id.*) The Executive Secretary then concluded that the Board's decision was based on "Mr. Bergamatto's work record and upon the express provisions of the 2015 and 2010 Plans as set forth above." (*Id.*) *See* (2015 Plan, ECF No. 31-3, Exh. 18) (providing copy of the "Agreement and Declaration of Trust and Plan of the New York Shipping Association-International Longshoremen's Association Pension Trust Fund and Plan," which was amended and restated on January 26, 2015).

## II. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that the court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Hayes v. Harvey*, 874 F.3d 98, 103 (3d Cir. 2017). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence supporting the non-moving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are

8

insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's cases, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254. That "evidentiary burden" is discussed in the following sections.

### III. Discussion

Defendants the Board and Ward move for summary judgment on all Counts in the Complaint. In Section III.A, *infra*, I will consider Defendants' motion as to Count I, wrongful denial of accrued benefits. In Section III.B, *infra*, I will consider Defendants' motion as to Count II, statutory penalties for disclosure violations.

For the reasons discussed below, Defendants' motion for summary judgment will be granted as to both Count I and Count II.

## A. Count I- Entitlement to Benefits under ERISA

In Count I of the Complaint, Bergamatto alleges that he was a plan participant who was due additional pension benefits for the years 2000 through 2004 under an amendment, and that the Board erroneously denied those benefits by misinterpreting Plan provisions. (Compl. ¶ 20).[5]

An ERISA plan participant has the right to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). To assert a claim under ERISA Section 502(a)(1)(B), a plan participant "must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan," and that the plan administrator improperly

---

[5] The Complaint also alleges under Count I that the Board failed to consider Bergamatto's equitable circumstances and also violated its fiduciary obligation to address an alleged erroneous overpayment of temporary disability benefits. (Compl. ¶¶ 21-22).

According to the Complaint, at some point before the appeal hearing, the Board Secretary sent Bergamatto a letter regarding the $7,693.71 that Bergamatto received in temporary disability benefits from the NYSA-ILA Accident and Health Plan because of his rotator cuff injury. (*Id.* at ¶16). *See* (Exh. A to Bergamatto Aff.) The letter stated that the benefits were paid in error because Bergamatto's waterfront pass was revoked at the time, and requested that Bergamotto refund those benefits. (*Id.*)

In the Complaint, Bergamatto asserts that his pass was "never revoked but only suspended." (Compl. ¶ 16). *See* Bergamatto Aff. ¶ 4. "Under the rules of the Waterfront Commission", Bergamatto says, "the pass can only be revoked after a hearing." (Compl. ¶ 16).

Bergamatto's submissions to this Court at this summary judgment stage do not address any of those allegations, notwithstanding defendants' discussion of them in their brief. I therefore assume that he is no longer pursuing those claims. Nevertheless, I note that it appears such claims should be made against the NYSA-ILA Welfare Fund, not the defendant Board of the Fund. *See* (Ward Aff. ¶ 8) (stating that the Pension Trust Fund does not provide or offer temporary disability benefits; rather, the NYSA-ILA Welfare Fund, which is "a separate and distinct ERISA fund that it governed by its own agreement and declaration of trust and plan" provides such benefits). *See* (Def. Br. 19) ("PTF and its Board of Trustees cannot "address the issue of the allegedly erroneous overpayment of TDB benefits" as alleged in ¶ 22 of the Complaint because PTF's Agreement and Declaration of Trust and Plan does not govern those benefits.").

10

denied those benefits. *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006).[6]

Defendants argue that Bergamatto is unable to prove that the pension benefits are actually "due" because his claim for benefit accruals for the years 2000 through 2004 is precluded by the plain terms of the 2010 and 2015 Plans. (Def. Br. 8-13.) Defendants argue that under the plain language of the 2015 Plan, the 2010 Plan applies to Bergamatto's denial-of-benefits claim. And under the plain language of the 2010 Plan, they say, Bergamatto's claim is barred. I agree.

Article VIII, Section 2 of the 2015 Plan contains a Pension Determination Clause which states: "[t]he provisions of the Plan in effect during the Participant's *last year of credited service* shall be applied to determine the Participant's right to a benefit and the amount thereof." (2015 Plan, Art. VIII, §2) (emphasis added). The Plan defines a "year of credited service", in relevant part, as "700 credited hours for those years after September 30, 1978." (*Id.* at Art. IV, § 1(b)).

The NYSA Pension Eligibility Chart for Bergamatto shows that in the 2010 contract year, Bergamatto worked 2,729 hours. (ECF no. 31-3, Exh. 4). Therefore, as Defendants correctly point out, under the terms of the 2015 Plan, 2010 was the last contract year in which Bergamatto worked more than 700 credited hours. Contract year 2010 was therefore Bergamatto's "last year of credited service." Accordingly, Ward correctly relied on the 2010 Plan in determining whether Bergamatto was eligible for pension benefits. (Ward Aff. ¶ 16).

Article II, Section 1(q) of the 2010 Plan states, in relevant part, that "any person who was first hired for employment in the longshore industry on or after October 1, 1996, and who was not a Participant as of September 30,

---

[6] Prior to filing a claim in federal court under ERISA, a party typically must exhaust all of the administrative remedies available under the plan. *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002) (citations omitted). Here, it is undisputed that Bergamatto exhausted the available administrative remedies.

11

2004, shall be eligible to participate as a Participant in the Plan effective October 1, 2004, *but shall not be entitled to accrue credited service for pension benefit accrual purposes under the Plan for any hours of employment earned prior to October 1, 2004.*" (2010 Plan, Art. II, § 1(q)(iii)) (emphasis added). *See* (*id.* at Art. II, § 1(v)(iii)) (using the sample language in the definition of "year of credited service"). Bergamatto was hired at some point in 2000 (*i.e.*, post-October 1, 1996). Accordingly, as Ward found, Bergamatto was subject to the Plan's exclusion, quoted above; he was not "'entitled to accrue credited service for pension benefit accrual purposes under the Plan for any hours of employment earned prior to October 1, 2004.'" (Def. Br. 9) (quoting 2010 Plan, Art. II, §§ 1(q)(iii), 1(v)(iii)). *See* (Ward Aff. ¶ 12). *See also* (2010 Plan, Art. I, § 2) (including a Pension Determination Clause which states that pension-benefit determinations are made according to the plan provisions in effect at the time of a participant's last year of credited service); (*id.* at Art. II, § (v)(ii) (defining a "year of credited service" as "any year in which a Participant has at least 700 hours of credited service.").

Bergamatto, however, maintains that under the 2013 amendment to the Plan, he is owed pension credit for the years 2000 through 2004. (Pl. Brf. 5, 9-10. *See* NYSA-ILA Pension Trust Fund and Plan Secretary's Certificate at 1.) He concedes that under the 2010 Plan's Pension Determination Clause, he is not eligible for that pension credit. (*Id.* at 5.) However, because the Pension Determination Clause is a "general rule of application" that does not explicitly refer to benefit accruals from 2001-2004, says Bergamatto, the 2013 amendment, which directly addresses accruals and was incorporated into the Plan while Bergamatto was still a participant, applies. (*Id.* at 5-6). He concludes that the Board's interpretation of the 2010 Plan was arbitrary, capricious and unreasonable because the Board relied on "a plan provision which has nothing to do with benefit accruals." (*Id.* at 9.) I do not agree with Bergamatto's reasoning.

12

As I previously recognized at the motion-to-dismiss stage, in *Firestone Tire & Rubber Co. v. Brack*, 489 U.S. 101, 115 (1989), the United States Supreme Court held that a denial of benefits under ERISA "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits *or* to construe the terms of the plan."[7] (emphasis added). Here, the Plan does explicitly grant the administrator, the Board,[8] the ability to determine benefit eligibility and to "construe and interpret" the terms and provisions of the Plan. Specifically, the 2010 Plan provides, in relevant part, that the Board has the

> sole and absolute discretionary authority (1) to determine eligibility for benefits, (2) to interpret and construe the terms and provisions of the Trust and the Plan, and (3) to make factual findings in connection with applications for benefits and to make other determinations involving application of the provisions of the Trust and Plan.

(2010 Plan, Art. IX, § 19.) *See* (*id.* at Art. IX, § 4(d)) (providing that one of the enumerated powers of the Board includes the power "[t]o determine all questions of eligibility for benefits and the method of payment thereof"). I must therefore review the administrator's decision under an arbitrary-and-capricious standard. *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120–21 (3d Cir. 2012).

Under that standard, which vests discretion in the administrator, this Court "will not set aside the administrator's interpretations of 'unambiguous plan language' as long as those interpretations are 'reasonably consistent' with the plan's text," and "will only disturb the administrator's interpretations of ambiguous plan language when those interpretations are 'arbitrary and capricious.'"[9] *Dowling v. Pension Plan For Salaried Employees of Union Pac.*

---

7    *See Bergamatto*, 2017 WL 4155225, at *5.

8    *See* Summary Plan Description at 1 (stating "[t]he Plan Administrator has the sole authority and discretion to control and manage the operation and administration of the Fund. The Fund's Board of Trustees is the Plan Administrator").

9    *See Orvosh v. Program of Grp. Ins. for Salaried Employees of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir. 2000) (quoting *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 41 (3d Cir.1993) (stating that "a plan administrator's decision will be

13

*Corp. & Affiliates*, 871 F.3d 239, 245 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 1032 (2018) (internal citations omitted). As noted by the *Dowling* Court, "whether plan language is ambiguous or unambiguous is itself a question of law." *Id.* at 245-46 (citing *Fleisher*, 679 F.3d at 121). *See Taylor v. Cont'l Group Change in Control Severance Pay Plan*, 933 F.2d 1227, 1233 (3d Cir. 1991) (citing *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir.1980)) (stating that "[a] term is ambiguous if it is subject to reasonable alternative interpretations").

I find that the relevant plan language is not ambiguous and that the Board's interpretation of that language is "'reasonably consistent'" with the Plan's language. *Fleisher*, 679 F.3d at 121 (quoting *Bill Gray Enters. v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001)). The plain language of the 2010 and 2015 Plans makes clear that Bergamatto was not eligible for benefit accruals from 2001 through 2004. To reiterate, the Pension Determination Clause of the 2010 Plan provides that "[t]he provisions of the Plan in effect during the Participant's *last year of credited service* shall be applied to determine the Participant's right to benefits and the amount thereof." (2010 Plan, Art. I, § 2) (emphasis added). The May 2013 Amendment to that Plan, on the other hand, states, in relevant part: "[e]ffective October 1, 2012, Participants hired on or after October 1, 1996 shall receive pension benefit accruals for years of credited service earned from 1996 through 2004 [.]" *See* (NYSA-ILA Pension Trust Fund and Plan Secretary's Certificate at 1). That amendment, however, was not in effect during 2010, Bergamatto's last year of credited service.

---

overturned only if it is 'clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan'"); *Moats v. United Mine Workers of America Health and Ret. Funds*, 981 F.2d 685, 688 (3d Cir. 1992) ("[U]nder the arbitrary and capricious standard, the trustees' interpretation should be upheld even if the court disagrees with it, so long as the interpretation is rationally related to a valid plan purpose and not contrary to the plain language of the plan.").

14

It is true, as Bergamatto says, that the Pension Determination Clause "is silent" as to benefit accruals (Pl. Br. 9), in the sense that it does not literally contain the phrase "pension benefit accruals." Nevertheless, the Clause does clearly apply to such accruals. The Clause's use of the phrase "last year of credited service" incorporates the definition of "year of credited service." The phrase "year of credited service," in turn, "for the purpose of vesting and accrual of benefits" is defined under the Plan as "any year in which a Participant has at least 700 hours of credited service." (2010 Plan, Art. II, § 1(v)(ii)).

It is undisputed that Bergamatto's "last credited year of service" is 2010. Under the Pension Determination Clause, the provisions of the Plan in effect during 2010 are the provisions which are relevant. (Pl. Br. 5.) And the 2010 Plan excludes benefits for employees in Bergamatto's situation: "any person who was first hired for employment in the longshore industry on or after October 1, 1996, and who was not a Participant as of September 30, 2004, shall be eligible to participate as a Participant in the Plan effective October 1, 2004, *but shall not be entitled to accrue credited service for pension benefit accrual purposes under the Plan for any hours of employment earned prior to October 1, 2004.*" (2010 Plan, Art. II, § 1(q)(iii)) (emphasis added). Therefore, the Board's rejection of Bergamatto's request for benefit accruals for years 2000 through 2004 was consistent with the 2010 Plan's explicit, unambiguous terms barring pension accruals for the hours he worked before October 1, 2004, and was not arbitrary or capricious.

Bergamatto relies on *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995), *abrogated by Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014). Applying the *Moench* factors, he maintains that he qualifies under the clear terms of the Plan Amendment. (Pl. Br. 9-10.) In *Moench*, the United States Court of Appeals for the Third Circuit adopted and applied the Eighth Circuit's "series of helpful factors" in determining whether an interpretation of a plan is reasonable. 62 F.3d at 566. Those factors were:

15

> (1) whether the interpretation is consistent with the goals of the Plan; (2) whether it renders any language in the Plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the [relevant entities have] interpreted the provision at issue consistently; and (5) whether the interpretation is contrary to the clear language of the Plan.

*Id.* (quoting *Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.*, 48 F.3d 365, 371 (8th Cir. 1995)). "No single *Moench* factor is dispositive; rather, a reviewing court must examine the *Moench* factors holistically in making a determination." *Elite Orthopedic & Sports Med. PA v. N. New Jersey Teamsters Benefit Plan*, No. CV146932ESMAH, 2017 WL 3718379, at *5 (D.N.J. Aug. 29, 2017) (citing *McCall v. Metro. Life Ins.*, 956 F. Supp. 1172, 1182 (D.N.J. 1996)).

Consideration of the *Moench* factors, however, leads to the same conclusion: that the Board's determination was reasonable. First, the Board's interpretation is consistent with the Plan's goals of "preventing former employees from obtaining retirement benefit increases that occurred after they ceased employment," given that "those increases were not earned by them and were not funded by them during their employment." (Def. Reply Br. 5.) Second, the Board's interpretation does not render any language in the Plan meaningless or internally inconsistent. Rather, as pointed out by Defendants, the Board's interpretation faithfully applies the Pension Determination Clause, while Bergamatto's interpretation conflicts with the clear language of the Pension Determination Clause and renders it meaningless. (Def. Br. 13, Def. Reply Br. 5.) Third, there is no evidence that the Board's determination conflicts with ERISA's requirements. Fourth, there is no evidence that the Board has failed to interpret the Pension Determination Clause consistently. Finally, and most importantly, the Board's interpretation is consistent with the plain language of the Plan for the reasons explain above. *See Weiss v. Prudential Ins. Co. Of Am.*, 497 F. Supp. 2d 606, 610 (D.N.J. 2007) (citing *McCall*, 956 F.Supp. at 1183) ("The most important *Moench* factor is the fifth factor: the clear, plain language of the Plan.").

16

Accordingly, Bergamatto fails to establish a genuine dispute of material fact precluding summary judgment. *See Funk v. Cigna Grp. Ins.*, 648 F.3d 182, 192 (3d Cir. 2011) (quoting *Bill Gray Enters*, 248 F.3d at 218) ("If the terms are unambiguous, then any actions taken by the plan administrator inconsistent with the terms of the document are arbitrary. But actions reasonably consistent with unambiguous plan language are not arbitrary."). Defendants' motion for summary judgment on Count I is granted.

### B. Count II- Failure to provide documents under ERISA

In Count II of the Complaint, Bergamatto alleges that Ward failed to timely respond to his request for the summary plan description. (Compl. ¶¶ 10, 13, and 23). In particular, he alleges that he submitted an informational request on July 10, 2014, and that Ward did not comply until December 2, 2014. (*Id.*) Bergamatto contends that this failure to timely respond is a violation of 29 U.S.C. § 1132(c)(1) and that Ward is liable for a statutory penalty of $100 per day. (*Id.* at ¶ 23). Although it appears that there is a dispute of fact as to when Ward complied with Bergamatto's request, I find that as a matter of law, Bergamatto's claim nevertheless fails.

Under ERISA § 104(b)(4), "upon written request of any participant or beneficiary," the administrator must "furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). ERISA also provides that a court can impose a penalty of up to $100 per day against

> [a]ny administrator who . . . fails or refuses to comply with a request for any information which such administrator is required by [ERISA] to furnish to a participant or beneficiary. . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request. . .

*Id.* § 1132(c)(1)(B). A plan "administrator" is:

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in

17

the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

*Id.* § 1002(16)(A).

Therefore, to state a claim under ERISA Section 502(c)(1), "a plaintiff must allege that 1) it made a [written] request to a plan administrator, 2) who was required to provide the requested material, but 3) failed to do so within 30 days of the request." *Spine Surgery Assocs. & Discovery Imaging, PC v. INDECS Corp.*, 50 F. Supp. 3d 647, 656 (D.N.J. 2014). As recently recognized by Judge Freda L. Wolfson of this Court, "[a]s a penal statute, the terms of § 502(c)(1) must be 'construed strictly,' *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Pension Plan*, 24 F.3d 1491, 1505 (3d Cir. 1994), and thus, a plaintiff seeking relief under § 502(c)(1) must demonstrate compliance with each of these statutory requirements." *Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.*, No. CV172055FLWDEA, 2018 WL 2441768, at *9 (D.N.J. May 31, 2018).

Here, the Plan here clearly identifies the Board, not Ward, as the Plan Administrator. (*See* Summary Plan Description at 1.) Bergamatto theorizes that Ward is the *de facto* plan administrator. (Pl. Br. 11-12). That claim squarely presents the legal issue of whether a party can be held liable under ERISA Section 502(c)(1) under a de facto plan administrator theory.

The Third Circuit has not yet ruled on that issue.[10] Eight other Circuits, however, have rejected the de facto administrator theory. *See Ibson v. United Healthcare Servs., Inc.*, 877 F.3d 384, 390 (8th Cir. 2017); *Connecticut Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 486 (5th Cir. 2017); *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 794 (7th Cir. 2009); *Gore v.*

---

10  *See Haberern*, 24 F.3d at 1506 n.9 (declining to address whether a letter addressed to a non-administrator could have been an "an effective statutory request" under a *de facto* plan administrator theory and stating "[b]ut because we find the letter was not a 'request' within the meaning of section 1025(a), it is unnecessary to reach this issue").

18

*El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 842 (6th Cir. 2007); *Lee v. Burkhart*, 991 F.2d 1004, 1010 (2d Cir. 1993); *McKinsey v. Sentry Inc.*, 986 F.2d 401, 404 (10th Cir. 1993); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 62 (4th Cir. 1992); *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 300 (9th Cir. 1989); *but see Law v. Ernst & Young*, 956 F.2d 364, 373–74 (1st Cir. 1992); *Rosen v. TRW, Inc.*, 979 F.2d 191, 193–94 (11th Cir. 1992). Following that majority view, courts in this District have consistently rejected the de facto administrator theory. *See Plastic Surgery Ctr.*, 2018 WL 2441768, at *10 (dismissing plaintiff's § 502(c)(1) claim and noting that a majority of Circuits have rejected the argument that a party could be held liable under § 502(c)(1) as a *de facto* plan administrator); *Campo v. Oxford Health Plans, Inc.*, No. 06-4332, 2007 WL 1827220, at *5 (D.N.J. June 26, 2007) (declining to adopt the minority view and stating that "[t]o do so would require the Court to ignore the statutory language that imposes a duty on the plan's 'administrator' alone").[11]

I follow suit and find that based on the plain and unambiguous text of ERISA, as well as the weight of existing case law, Bergamatto's de facto administrator theory fails as a matter of law.

Bergamatto falls back on a theory of equitable estoppel, saying that Ward "never disavowed the title of Plan Administrator and never advised Bergamatto's counsel to redirect his request to the Board." (Pl. Br. 13.) Bergamatto also asserts that a Notice advising participants to contact the Board or Ward if they have additional questions about endangered status "appears to suggest that at the very minimum, Ward was a co-administrator." (*Id.* at 11-12. *See* ECF no. 11-2, Exh. F at 2.) I am not persuaded.

---

[11]  *See also Mazzarino v. Prudential Ins. Co. of Am.*, No. CIV. 13-4702 KSH, 2015 WL 1399048, at *10 (D.N.J. Mar. 26, 2015); *In re Wargotz v. NetJets, Inc.*, No. CIV.09-4789(WJM), 2010 WL 1931247, at *5 (D.N.J. May 13, 2010).

"Equitable estoppel 'is invoked in the interests of justice, morality and common fairness.'" *Newark Cab Ass'n v. City of Newark*, 235 F. Supp.3d 638, 648 (D.N.J. 2017) (quoting *Knorr v. Smeal*, 178 N.J. 169, 178 (2003)). "To establish equitable estoppel, plaintiffs must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiffs acted or changed their position to their detriment." *Id.* (quoting *Knorr*, 178 N.J. at 178). Bergamatto has failed to provide any evidence that he detrimentally relied on Ward's alleged misrepresentations. Moreover, as to the Notice, the last sentence of the Notice generally provides, in relevant part: "In the event you have questions or would like additional information, you may contact the Board of Trustees, or Mr. Charles Ward, Executive Director . . ." (ECF no. 11-2, Exh. F at 2.) This general sentence identifies Ward as Executive Director, not co-administrator, and merely states that he can answer relevant questions. It is not sufficient to support a finding that Ward was a co-administrator.

Defendants' motion for summary judgment on Count II is therefore granted.

### IV. Conclusion

For the foregoing reasons, the motion (ECF no. 31) of the Board and Ward for summary judgment is granted and judgment is entered in their favor as to the entire Complaint. An Order will be entered in accordance with this Opinion.

Dated: July 12, 2018

Hon. Kevin McNulty
United States District Judge

20